ANDERSON, C.J., and DROWOTA, REID and BIRCH, JJ., concur.

Jesse S. TIDWELL, Appellant,

v.

STATE of Tennessee, Appellee.

Supreme Court of Tennessee.

May 13, 1996.

Rehearing Denied July 8, 1996.

Jesse Spence Tidwell, pro se.

Charles W. Burson, Attorney General & Reporter, Michael E. Moore, Solicitor General, Gordon W. Smith, Associate Solicitor General, Nashville, Dan W. Cook, Assistant District Attorney General, Charlotte, for Appellee.

BIRCH, Justice.

The appellant, Jesse S. Tidwell, appeals the trial court's denial of his petition for post-conviction relief. At issue is whether his trial counsel's failure to require the prosecutor to elect the particular offenses upon which convictions would be sought deprived him of his constitutional right to the effective assistance of counsel.[1] We have carefully examined the trial and post-conviction transcripts and have thoroughly considered the contentions of both parties. For the reasons discussed below, we find that counsel's performance failed to satisfy the criteria established in *Baxter v. Rose*, 523 S.W.2d 930 (Tenn.1975) and in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The appellant has made the requisite showing of prejudice for all but the incidents on which the testimony at the original trial was detailed and specific.

On October 7, 1987, a jury convicted Tidwell of forty-two offenses:[2] fourteen counts

---

1. The appellant also claimed that his trial counsel was ineffective for the following reasons: (1) failure to file a motion to suppress evidence seized during a search of his house; (2) failure to object to the prosecutor's alleged references to appellant's failure to testify; (3) failure to make a closing argument; (4) failure to call "character" witnesses; (5) failure to object to trial judge questioning the victim; and (6) commenting to the trial judge during a jury-out hearing that some convictions were expected. We find that trial counsel was not ineffective on these grounds, and the issues are without merit.

2. In one presentment and one indictment, the grand jury charged Tidwell with monthly sexual encounters with the victim over a fourteen-month period between December 1985 and January 1987. Each encounter produced four counts: rape, statutory rape, incest, and contributing to the delinquency of a minor. Presentment number 16273 covers January 1986 to January 1987 and contains fifty-two counts. Indictment number 16274 covers the December 1985 incident and contains four counts. Hereafter, we refer to both charging instruments as "indictments."

As enumerated, the indictments consisted of a total of fifty-six counts. However, the trial judge properly instructed the jury that a single act of

each of rape,[3] incest,[4] and contributing to the delinquency of a minor.[5] The appellant is currently incarcerated under a sentence which was reduced by the Court of Criminal Appeals on direct appeal to an effective sentence of seventy-five years in the Department of Correction.

In light of our resolution of this cause, we will recount only those facts necessary for understanding the issue and its analysis. The record shows that sexual activity between the appellant and his daughter, born April 1, 1972, began in Dickson County in December 1985. This activity, which included cunnilingus, fellatio, and vaginal intercourse, continued for fourteen months—ending January 1987.

The victim testified that this sexual activity with her father occurred approximately once a week. She was unable, in the main, to ascribe a particular act to a specific time, whether by date or other reference. There were, however, two discrete incidents that the victim identified with particularity. She specifically recalled having engaged in vaginal intercourse with the appellant in late December 1985 shortly after the family had moved to Dickson County. She remembered that this incident occurred while she was out of school on Christmas break. She recalled also having engaged in vaginal intercourse with the appellant in April 1986. She testified that this incident occurred one evening after the appellant had taken the victim's mother to the house of the victim's grandfather. She recalled that the appellant had drunk vodka and had shown pornographic films to her on that occasion.

In a confession introduced into evidence at trial, the appellant admitted having engaged in sexual intercourse with the victim, and he told investigators that the last such incident occurred in January 1987, three days before his arrest on these charges. The appellant offered no proof.

As stated, the issue before us concerns the effective assistance of counsel. The appellant contends that his trial counsel failed to request the trial court to order the prosecutor to elect the offenses upon which he would rely for convictions. That failure, the appellant insists, deprived him of the effective assistance of counsel as guaranteed by our state and federal constitutions.

At the hearing on the post-conviction petition, appellant's trial counsel was questioned about his reason for not requesting the State to elect offenses. He gave the following response:

> The two indictments and all the multi-counts against him were not date-specific nor were they place-specific. They alleged blank day of a certain month and in Dickson County. Upon cross-examination of his daughter, of the young girl, I asked for specifics in each particular month. My recollection is she could only give specifics on one particular month, at which time I thought it would be best, at that time, to leave it as such rather than even attempt to ask for an election. In hindsight that was probably wrong.

At the conclusion of the proof, the post-conviction court denied relief without filing written findings of fact and conclusions of law; the court did, however, comment on the record. One such comment is reproduced below:

> Now then, ... I see a witness on the witness stand, Mr. Tidwell, who I have observed and listened to very carefully. As they say, I have observed his manner and demeanor on the witness stand. I specifically find, and I so state for the appellate record that I do not believe Mr. Tidwell is a credible witness. I don't believe him.

■ Initially, our standard of review is dictated by several well-established legal principles. In Tennessee, effective assistance of counsel is determined by the criteria

---

intercourse could constitute rape or statutory rape, but not both.

**3.** Tenn.Code Ann. § 39–2–604 (1982) (repealed 1989). The current rape statute is codified at Tenn.Code Ann. § 39–13–503 (Supp.1995).

**4.** Tenn.Code Ann. § 39–4–306 (1982) (repealed 1989). This provision is currently codified at Tenn.Code Ann. § 39–15–302 (1991).

**5.** . Tenn.Code Ann. § 37–1–156 (1984).

established in *Baxter v. Rose.* This Court's holding in *Baxter* requires that the advice given, or the services rendered by the attorney, be within the range of competence demanded of attorneys in criminal cases. 523 S.W.2d at 936. The federal rule, enunciated by the United States Supreme Court in *Strickland v. Washington,* provides as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or [ ] sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064.

■■■ Additionally, in post-conviction proceedings, the defendant has the burden of proving the claims raised in the petition by a preponderance of the evidence. *Wade v. State,* 914 S.W.2d 97, 101 (Tenn.Crim.App. 1995); *Bratton v. State,* 477 S.W.2d 754 (Tenn.Crim.App.1971). Findings of fact made by the trial court are conclusive on appeal unless the evidence preponderates against the judgment. *Cooper v. State,* 849 S.W.2d 744, 746 (Tenn.1993); *Butler v. State,* 789 S.W.2d 898, 899 (Tenn.1990). Accordingly, we are bound to affirm the judgment unless the evidence in the record preponderates against the trial court's findings. *See Black v. State,* 794 S.W.2d 752, 755 (Tenn. Crim.App.1990).

■■■ As we stated earlier, the allegations of ineffective assistance of counsel are based upon counsel's failure to seek from the trial court an order requiring the prosecutor to elect the sexual acts upon which the State would rely for convictions. The appellant argues that there was no assurance of jury unanimity in the sense that each juror agreed upon a single, discrete, identifiable act to correspond to each count beyond a reasonable doubt because the victim testified to numerous sexual encounters, absent an election.

In *Burlison v. State,* 501 S.W.2d 801, 804 (Tenn.1973), we held that it is "the duty of the trial judge to require the State, at the close of its proof-in-chief, to elect the particular offense of carnal knowledge upon which it would rely for conviction, and to properly instruct the jury so that the verdict of every juror would be united on the one offense." *Burlison* enumerated three fundamental reasons for requiring election in cases in which there is evidence of numerous instances of unlawful sexual conduct: (1) to enable the defendant to prepare for and defend against the specific charge[s]; (2) to protect the defendant from double-jeopardy by individualization of the issue; and (3) to ensure unanimity of verdict so that the jury's verdict may not be a matter of choice between offenses—some jurors convicting of one offense and others of another offense—all within the same count. 501 S.W.2d at 803.

In our view, the first reason, to enable the defendant to prepare for and defend against the specific charge[s], could have been resolved with a request for a bill of particulars. Tenn.R.Crim.P. 7(c). Here, however, the post-conviction court was satisfied that trial counsel had obtained sufficient discovery, albeit by other means.

The second reason, to protect the defendant from double-jeopardy by individualization of the issue, has no application here because the appellant is already protected. *See State v. Hardin,* 691 S.W.2d 578, 580–81 (Tenn.Crim.App.1985) ("[T]he indictments and proof are sufficient to protect [the defendant] from further prosecution for acts of this nature committed against this victim within the times alleged in the indictments.").

The third reason is the one that troubles us in this case. The indictments as returned contain fifty-six counts—fourteen each of aggravated rape, statutory rape, incest, and contributing to the delinquency of a minor.[6]

---

**6.** *See supra* footnote 2.

Each count charges the commission of a specific offense on the "___" day of a named month. Thus, it is quite evident that there is no apparent means to differentiate among various counts of the same offense. Additionally, the indictments provide no means to enable a fact-finder to match a specific conduct to a specific count.

■ We have recognized the third *Burlison* reason as the most significant of the three because its purpose is to ensure a unanimous verdict. *State v. Shelton,* 851 S.W.2d 134, 137 (Tenn.1993). The indictment in this case, drafted as we have described, puts unanimity at serious risk. In *Shelton,* we stated:

> [I]n *Jamison v. State,* 117 Tenn. 58, 94 S.W. 675 (1906) the Court carefully acknowledged that "each unlawful act of carnal knowledge is a separate, substantive offense," rather than a continuous offense. Thus, to avoid the prosecution of uncharged crimes in cases involving age of consent laws and other sexual crimes, the state is required to "elect the specific offense upon which a verdict of guilty would be demanded."

851 S.W.2d at 137 (citations omitted). Thus, a defendant's right to a unanimous verdict before imposition of conviction requires the trial court to take precautions to ensure that the jury deliberates over the particular charged offense, instead of assembling a "patchwork verdict" based on the different offenses in evidence. *Id.* (citing *United States v. Duncan,* 850 F.2d 1104, 1110 (6th Cir.1988)). We adhere to the *Shelton* rationale.

When, as here, a jury is permitted to select for itself the offenses on which it will convict, the court cannot be assured of jury unanimity. Hence, when asked to function as "thirteenth juror" and assess the weight of the evidence to support the jury's verdict, the trial court cannot be certain which evidence was matched by the jury to which count. Moreover, absent an election, an appellate court reviewing the legal sufficiency of the evidence can hardly be confident that it has discharged its function properly. *Shelton,* 851 S.W.2d at 137.

The State makes an intriguing argument. As a predicate, it states:

> For twelve of the fourteen months, the victim was unable to recount *any* specifics about the offenses, except that the petitioner had engaged her in sexual intercourse. For the other two months she was able to provide some details about single offenses, respectively. While the victim acknowledged that the petitioner had penetrated her at least once a week during the time period [involved], her testimony did not distinguish one event in a given month from any other.

Based on these circumstances, the State suggests that (1) the jury had no separate offenses from which to choose; (2) non-unanimity was impossible; and (3) the State was not required, under *Burlison,* to elect offenses. The State apparently concludes that "jury unanimity is attained in such cases because, although the jury may not be able to distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described."

This approach, in our view, is akin to a "grab-bag" theory of justice. To illustrate the operation of this theory, in any given case the State could present proof on as many offenses within the alleged period as it chose. Because all such offenses will have been "proven," the jury may, in effect, reach into the brimming bag of offenses and pull out one for each count. Even when done by this method, the argument goes, each offense will have been proven beyond a reasonable doubt. We acknowledge that the illustration is an extreme one, but we think it makes the point: such an approach is contrary to our law.

In *Shelton,* we said:

> We appreciate the difficulties involved in prosecuting cases of sexual abuse committed against small children. In such cases, the rules of evidence and the rules of procedure have been relaxed to some extent to accommodate very young witnesses. Nevertheless, the constitutional protections guaranteed a criminal defendant, who is presumed by law to be innocent until proven guilty, cannot be suspended altogether because of the victim's age or relative inability to testify. In

cases such as this one, the state must either limit the testimony of prosecuting witnesses to a single event, or prepare the case so that an election can be made before the matter is submitted to the jury to decide.

851 S.W.2d at 139. As stated, we continue to adhere to this imperative. Accordingly, we find that the trial court's failure to order the State to elect the incidents upon which it sought conviction violated the essence of the *Burlison* and *Shelton* holdings.

Because the issue before us was raised in the post-conviction context of ineffective assistance of counsel, our remaining task is to determine whether the appellant has carried the burden of demonstrating the quantum of prejudice necessary for relief. Under the *Strickland* criteria, the appellant must demonstrate that counsel's performance was deficient and that the deficiency resulted in his prejudice, thereby depriving him of a fair trial whose result is reliable. 466 U.S. at 687, 104 S.Ct. at 2064.

We are not comfortable with the reliability of the result reached in this trial. One reason is that the State would probably have been unable to match occurrences to those counts for which the testimony was non-specific. This inability is exacerbated by the absence of varying surroundings, events, or circumstances that could have lent a singular identity to each incident. As we observed in *Shelton*, "If the prosecution cannot identify an event for which to ask a conviction, then the court cannot be assured of a unanimous decision." 851 S.W.2d at 138.

Another source of discomfort may be found within the process of appellate review. Where an appellate court may find the proof sufficient to support the jury's verdict on any offense proven, its standard of review is much less stringent than that of a jury or a trial court on a motion for new trial.[7] Twelve jurors must unanimously find guilt beyond a reasonable doubt; an appellate court need only find that after reviewing the evidence in a light most favorable to the State, any rational trier-of-fact could find the essential elements of the crime beyond a reasonable doubt. Therefore, an appellate court's finding of evidentiary sufficiency "is an inadequate substitute for a jury's deliberation over identified offenses." *Shelton*, 851 S.W.2d at 138.

For the reasons above-stated, we find that trial counsel's performance fell below the *Baxter* and *Strickland* standards for attorneys in criminal cases. However, for three of the fourteen incidents upon which he was convicted—December 1985, April 1986, and January 1987—the appellant has failed to demonstrate the prejudice necessary for reversal; accordingly, we affirm those convictions and their respective sentences. As to the remaining incidents, the appellant has clearly demonstrated prejudice to a degree that requires reversal. The judgments of conviction based on those incidents are reversed; the respective sentences are vacated.

Accordingly, the judgment of the Court of Criminal Appeals is reversed in part and affirmed in part.[8] The cause is remanded to the trial court for trial or other disposition as to the remaining counts.

ANDERSON, C.J., and DROWOTA and REID, JJ., concur.

WHITE, J., not participating.

---

**7.** The trial judge's review of the evidence on a motion for a new trial is much more stringent than an appellate court's review. On a motion for a new trial, the trial court must act as a "thirteenth juror" to determine whether the verdict is supported by the evidence; that is, whether guilt was established beyond a reasonable doubt. Tenn.R.Crim.P. 33(f); *State v. Moats*, 906 S.W.2d 431 (Tenn.1995); *Curran v. State*, 157 Tenn. 7, 4 S.W.2d 957, 958 (1928); *Manning v. State*, 155 Tenn. 266, 292 S.W. 451, 457 (1927). Thus, " 'the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.' " *Moats*, 906 S.W.2d at 435 (quoting *Bolin v. State*, 219 Tenn. 4, 405 S.W.2d 768, 771 (Tenn.1966).

**8.** On presentment number 16273, the testimony was sufficient to support a conviction on counts 13, 14, and 16 for the April 1986 offense and counts 49, 51, and 52 for the January 1987 offense. The testimony was also sufficient to convict appellant on indictment 16274, which covers the December 1985 offense. We affirm these specific convictions.