IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 5, 2016

## MICHAEL MARKS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 10-07558      James M. Lammey, Jr., Judge**

_____

**No. W2015-00468-CCA-R3-PC  -  Filed April 15, 2016**

_____

The petitioner, Michael Marks, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Monica A. Timmerman, Memphis, Tennessee, for the appellant, Michael Marks.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Glen Baity, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In 2012, the petitioner was convicted by a Shelby County Criminal Court jury of rape of a child, a Class A felony, and was sentenced by the trial court to twenty-five years at 100% in the Department of Correction.  His conviction was affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. State v. Michael Marks, No. W2012-00564-CCA-R3-CD, 2013 WL 1870426 (Tenn. Crim. App. May 3, 2013), perm. app. denied (Tenn. Oct. 16, 2013).  Our direct appeal opinion reveals that the petitioner's conviction was based on his having performed oral sex on an eleven-year-old girl who was visiting in the home of her ten-year-old cousin, whose mother was the defendant's girlfriend.  The victim immediately reported the rape, and that same night the petitioner confessed his actions to both his girlfriend and the

victim's mother.  The petitioner also later gave a confession to police in which he blamed his behavior on his alcohol and marijuana use and claimed that the victim had essentially consented to having oral sex with him.  Id. at *1-4.

On April 30, 2014, the petitioner filed a *pro se* petition for post-conviction relief in which he raised a number of claims, including ineffective assistance of counsel. Following the appointment of post-conviction counsel, he filed an amended petition in which he alleged that his general sessions and trial counsel provided ineffective assistance by, among other things, failing to preserve the petitioner's rights to a preliminary hearing, refusing to argue the petitioner's *pro se* motion to dismiss the indictment, and by not including the denial of a preliminary hearing as an issue in the petitioner's motion for new trial.

At the January 21, 2015 evidentiary hearing, the petitioner's initial counsel, who represented the petitioner while his case was in general sessions court, testified that he had recently been elected as a general sessions court judge but had previously practiced law for thirty-nine years and was retained by the petitioner on May 28, 2010, which was the day following the petitioner's arrest.  He stated that he and the petitioner discussed the petitioner's right to a preliminary hearing.  He explained, however, that at the time, the district attorney's office usually made offers to a defendant in a child rape case only if the defendant did not push his right to a preliminary hearing:

> Well, . . . remember, you've got a child rape case, generally you can get offers made if you don't push the preliminary hearing because they don't want to put the child through the trauma of a preliminary hearing.
>
> The original offer in the case was twelve years -- well, the original offer was twenty-five years; and, you know, you're going to have a preliminary hearing if you would like one.  I got them down twelve years; and the twelve-year offer was basically, you know, so we don't have to -- the understanding was we don't put the child through the trauma of a preliminary hearing and you cross-examining the child and trying to embarrass the child in front of the court.

General sessions counsel testified that he eventually got the State to offer the petitioner a ten-year sentence.  In the meantime, he was attempting to have the petitioner mentally evaluated because, in spite of his confessions, the petitioner's "attitude was basically that it really wasn't his fault; that the little girl enticed him into it.  He'd been drunk and on drugs for two days watching porn movies . . . with the little girl; and . . . it really wasn't his fault."

2

General sessions counsel testified that the petitioner thought that a twelve- or fifteen-year sentence was too long. He said he explained to the petitioner the harsh attitude that most jurors have toward defendants in child rape cases and expressed his belief that the petitioner would "get twenty-five years, period" if the case was transferred to criminal court. He testified that he obtained the ten-year offer from the State "[s]omewhere around July 28th . . . to avoid sending the matter [to criminal court]." However, somewhere along that time, a different prosecutor with a more "hard-line" approach" to child rape cases took over the case, and on August 20, 2010, the ten-year offer was revoked.

General sessions counsel testified that after the offer was revoked, the petitioner said that he wanted a preliminary hearing, but the State refused, saying it was too late because they had already passed the thirty-day mark. In addition, because the petitioner was refusing to cooperate with the mental evaluation, the prosecutor announced that the State would just "yellow-sheet it," which was a term that counsel had never heard before or since, but which, he said, meant that "they just go ahead and go straight to the grand jury and have you indicted." The post-conviction court later recalled his memory of the procedure from his time with the district attorney's office:

> It seems to me like I recall when I was with the district attorney's office when someone refused to cooperate with an ME, and they had pas[sed] the point of no return where they could not request a preliminary hearing that they would call it a yellow sheet. From what I understand, the yellow sheet was just a designation the district attorney's office gave when they put a yellow sheet in the file.

> . . . .

> And sent it up to the action of the grand jury to be indicted as soon as possible. I think it works like th[e]y do a failure to appear bindover now where you actually lose your bond and the case is dismissed and it's indicted immediately before you're released.

General sessions counsel also testified that he did not think a preliminary hearing would have added anything to the case. On cross-examination, he testified that he requested the mental evaluation because the petitioner seemed not to understand the serious consequences of his situation. He said he took the State's ten-year offer to the petitioner, but the petitioner refused to sign it.

The public defender who was appointed to represent the petitioner on the day he was arraigned testified that the petitioner immediately expressed to her his discontent

with not having received a preliminary hearing. She said she called general sessions counsel that same day, who told her that he had conferred with the petitioner, that their defense strategy had consisted of trying to obtain a favorable offer from the State, that the State had ultimately offered a ten-year sentence but the petitioner had rejected it, and that by the time the petitioner rejected the offer and requested a preliminary hearing, the thirty-day time limit had passed.

Trial counsel explained that at the time of the case, Rule 5 of the Tennessee Rules of Criminal Procedure was not identical to its current form, in that it stated that a defendant who had been arrested but not indicted was entitled, upon request, to a preliminary hearing within ten days if he was in custody and within thirty days if he was not in custody.[1] She said the petitioner had filed a *pro se* motion to dismiss the indictment based on his lack of a preliminary hearing and wanted her to argue it, but she refused because she believed it was a frivolous motion. For the same reasons, she refused to include the issue in the motion for new trial. However, she took the petitioner to the courtroom and served as his "elbow counsel" while he argued his motion to dismiss to the trial court.

Trial counsel testified that she saw no grounds to file a motion to suppress the petitioner's statement because the petitioner voluntarily went to the police station to give the statement, was advised of his rights and signed a waiver, was not in custody, and told her that he was not threatened or coerced. In addition, she recalled that the petitioner had also admitted his actions in the presence of five "lay witnesses," having confessed to his girlfriend while the victim and the victim's cousin were present in the room, to the victim's mother when she arrived at the house that night, and to the victim's father during a later telephone conversation.

---

[1] In 2009, Rule 5 of the Tennessee Rules of Criminal Procedure provided in pertinent part:

> Indictment Before Preliminary Examination. – Any defendant arrested prior to indictment or presentment for a misdemeanor or felony, except small offenses, is entitled to a preliminary hearing *on request*, whether or not the grand jury is in session. If the defendant is indicted or charged by presentment while the preliminary hearing is being continued (whether at the defendant or the prosecutor's request) or at any time before he or she has been afforded a preliminary hearing on a warrant, the defendant may dismiss the indictment or presentment on motion filed not more than thirty days from the arraignment on the indictment or presentment. The dismissal shall be without prejudice to a subsequent indictment or presentment.

Tenn. R. Crim. P. (5)(e) (emphasis added).

Trial counsel testified that the State made an offer of twelve years after the case had been indicted and was in criminal court. The petitioner, however, refused the offer because the rape kit had come back showing no evidence of DNA collected from the victim, which the petitioner insisted proved he had not assaulted the victim, despite her attempts to get him to understand that the kind of sexual contact alleged in the case would not necessarily leave any DNA. At a later point, the petitioner expressed his willingness to accept an eight-year sentence, but the State was unwilling to make that deal.

The petitioner testified that he told general sessions counsel at their second meeting, after counsel brought him the State's first offer, that he wanted a preliminary hearing because there were some allegations in the affidavit of complaint that were not true. The petitioner claimed that counsel reacted by "talking aggressive toward [him], saying, 'Well, I'll give you a preliminary hearing if you want one.'" However, he never did receive a preliminary hearing. The petitioner testified that he never took any action in general sessions court to inform the judge that he wanted a preliminary hearing, but when he got to criminal court, he filed a petition for writ of habeas corpus based on the lack of a hearing. He said he also informed his appointed trial counsel that he wanted a preliminary hearing but she, like general sessions counsel, basically ignored him and went about scheduling a mental evaluation.

On cross-examination, the petitioner acknowledged that trial counsel was able to get several of the witnesses to admit that the victim did not initially mention anything about digital penetration, which was the allegation in the affidavit of complaint that the petitioner believed to be wrong, and which he wanted to explore at the preliminary hearing. He further acknowledged that he gave a written statement to police confessing oral sex with the victim and that he read and signed the statement.

Upon voir dire by the post-conviction court, the petitioner acknowledged that he never submitted to a mental evaluation in general sessions court and that the mental evaluation that was eventually performed in criminal court resulted in his being found competent. He further acknowledged that he had rejected the twelve-year offer in criminal court and elected to go to trial, despite his lawyers' warning that "there was a ninety-five percent chance [he was] going to get twenty-five years [at trial]."

The transcript of the hearing on the motion to dismiss, which is included in the record of this appeal, reveals that general sessions counsel informed the court that he thought he "could have gotten a late preliminary hearing," believing that he had "reserved" one based on his request for a mental evaluation of the petitioner. The petitioner, however, "refused to cooperate with the psychologist" on at least "two occasions." The petitioner acknowledged that he had deliberately refused to cooperate

with a mental evaluation, stating that he did so because he was "trying to get rid of [general sessions counsel]."

Carrie Shelton-Bush, the prosecutor who handled the case while the petitioner was in general sessions court, testified that "after a certain amount of time" with the petitioner "dragging his feet and not really cooperating," she told general sessions counsel that they "couldn't do a prelim anymore; that [the petitioner] needed to go ahead and either take his information offer or waive it to the grand jury."

The trial court's ruling on the motion is not included in the record before this court. However, the court indicated why it was likely to deny the petitioner's motion, stating, in pertinent part:

> Before I can rule on this – and, of course, I'm going to give each side an opportunity to argue their case. We are dealing with two separate – the law changed as of July 1st, 2010. The [petitioner] was arrested May 27th, 2010. And then it proceeded in general sessions until December of 2010. The law that I'm talking about is the law that pertains to indictment before preliminary examination. And one is the newer case, which became effective January 1st, 2010; and, for the record, this is Rule 5 of the Tennessee Rules of Criminal Procedure.

> The new rule is much more extensive and spells out a lot more things which would apply. Since he was arrested, . . . I guess there could be an argument made that the Rule 5 that was in effect at the time may govern in this case; however, these are rules of procedure, and sometimes they are not substantive; therefore; the change in the rule procedure may, in fact, govern.

> But in any case, in either way, I have to be – I think the new rule gives me a lot more guidance as far as what to do in a situation like this.

> Under the old rule, it says, "The defendant may dismiss the indictment on motion filed not more than thirty days from the arraignment. It appears he filed this motion to dismiss on January the 3rd, and his arraignment was December the 16th, so that's within thirty days. So, under the old rule, which would apply, he's satisfied that rule. But it doesn't say, "It must be." It doesn't say, "It shall be dismissed." It says[,] "The defendant may dismiss the indictment on motion." And, of course, what had transpired down in general sessions is important because it appears I have discretion to look at what happened down there to see if, in fact, he

6

was the cause of his own demise, why should he be rewarded now, at this juncture, with having the case dismissed, sent back to general sessions for a preliminary hearing.

Under the new rule, of course, which I think probably – since it is a rule of procedure – I think this would probably cover this, but I'm going to check into that as well.

It says expeditious hearings – "While a defendant should have a reasonable opportunity to assert any legal right, and generally it's thirty days from the date of arrest, you must demand a preliminary hearing. Preliminary hearings shall be conducted as expeditious as possible considering the inconvenience to victims and witnesses, the parties and the court, by unnecessary delays." So, I need the records from general sessions. Generally, they would be here, but because of the procedures and the yellow sheeting, it's treated like a nol. pross. Therefore, they don't send their records up. I'm going to have to get their records so I can get the dates so I can say, with a certain amount of certainty. I think I have discretion under both rules – the old rule and the new rule. I believe the new rule would apply; but, I think, under the old rule I have discretion to say that he caused this delay if, in fact, that's what those records show since he never submitted to a mental evaluation even though being ordered by the court to do so in general sessions. I'd like to see the order. I'm just assuming he was ordered. I'm assuming there was an order entered, so I need a copy of that. So, I'll have to have that information before I can rule in the entirety here.

At the conclusion of the hearing, the post-conviction court found that the petitioner had been deliberately stalling his mental evaluation in general sessions court and that it was, consequently, his own fault that he missed the time limit for a preliminary hearing. The court, therefore, found that the petitioner had not met his burden of showing either a deficiency in the performance of general sessions counsel or any prejudice to his case. The post-conviction court, similarly, found that the petitioner had not shown either a deficiency or any resulting prejudice with respect to his allegations against trial counsel, noting that her performance had been "exceptional" and that she had done "the best that she could" in a case in which the evidence against the petitioner was overwhelming. On January 21, 2015, the post-conviction court entered a written order denying the petition and incorporating by reference its oral findings of fact and conclusions of law. On February 24, 2015, the petitioner filed an untimely notice of appeal to his court.

## ANALYSIS

7

The petitioner contends that the post-conviction court erred in finding that he received effective assistance of counsel, arguing that counsel were deficient, thereby prejudicing his case, for not preserving his right to a preliminary hearing, not investigating the procedural history of the case or arguing his motion to dismiss the indictment, and not raising the denial of a preliminary hearing as an issue in the motion for new trial. The State responds by arguing that the appeal should be dismissed because it was untimely and the petitioner did not request that this court waive the untimely filing. In the alternative, the State argues that the record supports the post-conviction court's denial of the petition.

As an initial matter, we agree with the State that the notice of appeal was untimely. Tennessee Rule of Appellate Procedure 4(a) provides that the notice of appeal must be filed "within 30 days after the date of entry of the judgment appealed from." However, the rule further provides that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Id. Because the notice of appeal was filed only four days beyond the thirty-day time limit, we have elected to waive the timely notice of appeal requirement.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The record in this case supports the post-conviction court's findings that the petitioner failed to show that he was denied the effective assistance of general sessions counsel or trial counsel. General sessions counsel provided a reasonable explanation for not requesting a preliminary hearing, testifying that his defense strategy consisted of trying to obtain a favorable offer from the State and that by the time the State's ten-year offer was revoked, the prosecutor would no longer allow a preliminary hearing because of the petitioner's purposeful avoidance of the mental evaluation. Trial counsel also provided a reasonable explanation for why she had not argued the motion to dismiss based on the lack of a preliminary hearing or raised the issue in the motion for new trial, testifying that she believed the motion to be a frivolous one. Counsel also testified, and the post-conviction court agreed, that the petitioner was not prejudiced by the lack of a preliminary hearing. Accordingly, we affirm the judgment of the post-conviction court denying the petition.

## CONCLUSION

9

Based on the foregoing authorities and reasoning, we conclude that the petitioner has not met his burden of showing that he was denied the effective assistance of counsel. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE

10