IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 9, 2025

## MARCUS WILLINGHAM v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. 78787    James A. Turner, Judge**

———————————————————

### No. M2025-00178-CCA-R3-PC

———————————————————

The petitioner, Marcus Willingham, appeals the denial of his petition for post-conviction relief, arguing the post-conviction court erred in denying his  ineffective assistance of counsel claim.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Marcus Willingham, Hartsville, Tennessee, Pro Se (on appeal); Christian T. Moore, Nashville, Tennessee (at evidentiary hearing), for the appellant, Marcus Willingham.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

The petitioner was convicted of ten counts of rape of a child and two counts of sexual exploitation of a minor by electronic means, and he was sentenced to thirty years' incarceration.  The convictions stemmed from the victim's allegations that the petitioner, her biological father, "showed her pornography while committing sex acts on her and forcing her to commit sex acts on him." *State v. Willingham*, 2022 WL 1162822, at *1 (Tenn. Crim. App. Apr. 20, 2022), *perm. app. denied* (Tenn. July 13, 2022).  The abuse was brought to light when a note the victim wrote to her stepmother detailing her abuse was found and given to school administrators. *Id.* at *2-*3.  At trial, the victim, who was

ten years old at the time of trial, recounted in detail the instances of anal and oral penetration relied upon in support of the charges. *Id.* at *3-*4. The victim also recounted occasions when the petitioner showed her sexually explicit videos involving "daddy/daughter scenario[s]." *Id.* at *1, *4.

The petitioner appealed, arguing that the trial court erred in admitting pornographic terial found on his electronic devices and that the evidence was insufficient to sustain his convictions. *Id.* at *1. This Court affirmed the judgments, and the Tennessee Supreme Court denied the petitioner's application for permission to appeal. *Id.*

The petitioner filed a timely pro se petition for post-conviction relief in which he alleged the denial of effective assistance of counsel and that the jury was unconstitutionally selected and impaneled. Post-conviction counsel was appointed and filed two amended petitions. In the first amended petition, counsel specified that "ineffective assistance of counsel resulted in a jury being impaneled that was not properly selected" because "there were jurors who expressed they wanted [the] [p]etitioner to testify at trial . . . [and therefore] had a clear bias against [him] because he elected to not testify[.]" In the second amended petition, counsel added additional claims, including a claim that trial counsel "failed to dismiss certain jurors during *voir dire*."

The post-conviction court conducted an evidentiary hearing on September 16, 2024. At the onset of the hearing, the petitioner asserted his wish to have post-conviction counsel removed because counsel failed to include desired issues in the amended post-conviction petition. Among those issues were claims that trial counsel failed to object to prosecutorial misconduct, failed to object to the trial court not following the proper procedure for a deadlocked jury, and failed to object to the nurse practitioner testifying about her examination of the victim. The post-conviction court denied the petitioner's request to remove counsel, determining that the petitioner's new "allegations largely fall under the already pled allegations of post-conviction relief contained within the petitions and the amended petition."

Trial counsel testified that he reviewed the transcript of the jury voir dire in preparation for the hearing and recalled that "the jury selection was largely unremarkable. In other words, there was nothing that stood out to me about it." Counsel explained that "in picking a jury, . . . it is not as simple as whether you answer a question a certain way or not." Instead, "[i]t's the totality of that individual, their body language, their alertness, their willingness to communicate with you, how they sit when I'm talking versus how they sit when you're talking," that he evaluated in determining which jurors to strike.

Trial counsel also addressed the trial court's handling of the jury reporting it was deadlocked "after some period of deliberation . . . late in the day." Counsel recalled that

the trial court reread portions of the jury instructions related to unanimous verdict and then recessed for the day. Counsel "felt it was very shortly after they began their deliberations on the second day that they came back with a verdict, and the verdict was guilty." Counsel employed a private investigator to communicate with members of the jury who were willing to talk because he was "concerned . . . that something could have happened from the point that the jury stopped deliberating on day one to the point that they reached a unanimous verdict very quickly on day two." Due to his concern, counsel filed a "unique" motion requesting the trial court to question the jurors as to whether there had been any "undue pressure" placed on them to reach a verdict. The trial court denied the motion following a hearing because such inquiry was prohibited by the Rules of Evidence and case law.

The petitioner testified on some of his verbally raised complaints regarding the jury that were not alleged in his petition or amended petitions. The petitioner claimed that one juror stated during voir dire that her best friend in high school had been raped at the age of eight, but trial counsel did not question the juror further and the juror remained on the jury. The petitioner also claimed that another juror stated during voir dire that his ex-wife's son had been molested, but counsel did not question the juror further and the juror ended up serving as foreman of the jury. The petitioner complained that counsel should have excused or at least asked the two jurors if they could render a fair and impartial verdict. The petitioner further recalled that a potential juror expressed an opinion that "kids don't really lie about certain things." Although that juror was excused, another potential juror who had agreed with the statement was kept on the jury and "basically kind of tainted the jury." The petitioner averred there "should have been a mistrial for that."

The petitioner also testified that counsel failed to "object to prosecutorial misconduct" when the prosecutor mistakenly stated the petitioner was "guilty until proven innocent" or "guilty until proven guilty." Thereafter, during closing argument, the prosecutor improperly vouched for the credibility of witnesses and the victim.

In its argument, the State urged the post-conviction court to not consider the petitioner's claims that were not raised in his petition. The court took the matter under advisement and later entered an order denying the petition. The post-conviction court found that "trial counsel's decisions related to jury selection and peremptory challenges amount to strategic decisions of counsel," and the petitioner failed to demonstrate that "the jury that heard the trial was actually biased or was not impartial, regardless of each juror's testimony during voir dire." The court also observed that it allowed the petitioner "to testify as to other allegations of ineffective assistance of counsel that were not specifically and factually pleaded in his petition," including the "alleged failure to object to prosecutorial misconduct." The court stated:

The State argues that the [c]ourt should not even consider these allegations based upon their absence within his petition. Perhaps the State is correct. Nevertheless, the [c]ourt finds that as to each of these allegations, and any others broadly complained of during the [p]etitioner's testimony, that the [p]etitioner failed to establish, by clear and convincing evidence, that [counsel]'s representation was deficient or that the outcome of the trial would have been different.

This Court ultimately granted the petitioner's request to late-file his notice of appeal.

*Analysis*

On appeal, the petitioner argues that trial counsel was ineffective for failing to (1) move to suppress the testimony of Hollye Gallion, the nurse practitioner who examined the victim, because "the provision of a physical examination is the practice of medicine and may be rendered only by a licensed physician"; (2) object to the trial court not following the proper procedure for a deadlocked jury; (3) object to improper statements by the prosecutor during voir dire and closing argument; and (4) "challenge tainted and biased jurors." The State responds that all but the final issue is waived due to not being included in the post-conviction petition or amended petitions and, regardless, as to all issues, that the petitioner "failed to prove that trial counsel's performance was constitutionally ineffective." Because the post-conviction court allowed the petitioner to orally raise additional allegations of ineffective assistance of counsel, we elect to address the petitioner's allegations in this appeal and determine that the post-conviction court did not err in denying relief.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998).

The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact. *Id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The petitioner claims that trial counsel rendered ineffective assistance for failing to object to Hollye Gallion, a nurse practitioner, testifying concerning her examination of the victim because Ms. Gallion was "practicing medicine" without being a licensed physician or under the supervision of a licensed physician. The post-conviction court did not address this issue specifically, but it made a general finding that all issues "broadly complained of during the petitioner's testimony" but not included in the petition or amended petition had

not been proven by clear and convincing evidence. The record does not preponderate against the post-conviction court's determination that the petitioner failed to prove this claim by clear and convincing evidence. Ms. Gallion's testimony was essentially that her examination of the victim revealed no evidence of abuse. If anything, such testimony favored the petitioner, not prejudiced him. The petitioner, therefore, is not entitled to relief on this allegation.

The petitioner claims that trial counsel rendered ineffective assistance for failing to object to the trial court's not following the proper procedure for a deadlocked jury. The record shows that the jury deliberated for approximately one hour before sending a note to the trial court that it was deadlocked and needed further direction. The court called the jury back into the courtroom and, after learning the jury had not discussed each count of the indictment, instructed the jury to go through each count and determine whether it could reach a unanimous decision on any count. The court instructed:

> [D]iscuss each count individually. And beginning with Count 1, and then go to Count 2, and then Count 3, all the way down to Count 12 . . . . If after you have proceeded through those counts, if you are unable to reach a unanimous verdict as to any count, then we would discuss . . . what the next step would be . . . . Sometimes people get . . . hung up on the first count, and . . . I need to know what the decision might be on each particular count[.]

The post-conviction court did not specifically address this issue but, as with the previous issue, it found that the petitioner failed to prove the issues to which the petitioner broadly referred in his testimony but not in his petitioner or amene. Counsel testified at the evidentiary hearing that, after the verdict, he employed a private investigator to communicate with members of the jury who were willing to talk because he was "concerned . . . that something could have happened from the point that the jury stopped deliberating on day one to the point that they reached a unanimous verdict very quickly on day two." Due to his concern, counsel filed a motion requesting the trial court to question the jurors as to whether there had been any "undue pressure" placed on them to reach a verdict. In addition, the petitioner failed to present the testimony of any jurors to testify to any undue influence that affected the verdict in order to prove prejudice. The record supports the post-conviction court's determination that the petitioner failed to prove this claim by clear and convincing evidence. The post-conviction court did not err in determining that the petitioner is not entitled to relief on this allegation.

The petitioner also claims trial counsel rendered ineffective assistance for failing to object to improper statements by the prosecutor during voir dire and closing argument. The petitioner points to an instance in voir dire when the prosecutor said that the petitioner is "guilty until proven guilty" rather than "innocent until proven guilty" and to several areas

in closing argument where the prosecutor attempted to dispel the idea that the victim was lying. With regard to trial counsel's statement during voir dire, the trial court repeatedly apprised the venire of the correct standard. The post-conviction court found that the petitioner failed to prove by clear and convicting evidence that trial counsel was deficient and the petitioner was prejudiced. The record does not preponderate against the court's findings, and it did not err in denying relief on this basis. The petitioner is not entitled to relief on this allegation.

The petitioner claims that trial counsel rendered ineffective assistance for failing to "challenge tainted and biased jurors." The record shows that in response to questioning about whether anyone on the venire or someone close to him or her had been the victim of sexual abuse as a child, one potential juror responded that her best friend in high school had been abused as a child. Another potential juror answered that his ex-wife's son had been molested. In response to questioning about children lying, one potential juror expressed an opinion that children do not lie about certain things. Specifically, the juror said, "And there are certain things that they are not as aware of. So, for them to lie about certain things, they have to have some knowledge of that to begin with." That juror was later stricken but another potential juror who agreed with the statement about children not lying about certain things was empaneled. The petitioner argues that counsel was ineffective for failing to strike the jurors who knew of people who had been sexually abused as children or move for a mistrial following the stricken juror's comment about children not lying.

Trial counsel testified at the evidentiary hearing that he reviewed the transcript of the jury voir dire in preparation for the hearing and recalled that "the jury selection was largely unremarkable. In other words, there was nothing that stood out to me about it." Counsel explained that "in picking a jury, . . . it is not as simple as whether you answer a question a certain way or not." Instead, "[i]t's the totality of that individual, their body language, their alertness, their willingness to communicate with you, how they sit when I'm talking versus how they sit when you're talking," that he evaluated in determining which jurors to strike.

As to this issue, the post-conviction court found that "trial counsel's decisions related to jury selection and peremptory challenges amount to strategic decisions of counsel." This Court has previously recognized that trial counsel's "'actions during voir dire are considered to be matters of trial strategy,' which is generally entitled to deference." *Pruitt v. State*, 2022 WL 1439977, at *85 (Tenn. Crim. App. May 6, 2022) (quoting *Rogers v. State*, 2012 WL 3776675, at *36 (Tenn. Crim. App. Aug. 30, 2012), *perm. app. denied* (Tenn. Dec. 11, 2012)). The post-conviction court found that the petitioner failed to show that trial counsel's handling of the jury voir dire was outside the wide range of reasonable professional assistance. Moreover, as noted by the post-conviction court, the petitioner did

not call either of the complained-of jurors to testify at the evidentiary hearing or otherwise demonstrate "that the jury that heard the trial was actually biased or was not impartial, regardless of each juror's testimony during voir dire." The court found that the petitioner failed to establish prejudice. The record does not preponderate against the court's findings, and the court did not err in denying relief. The petitioner is not entitled to relief on this allegation.

### *Conclusion*

Based on the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

s/ J. ROSS DYER
J. ROSS DYER, JUDGE